IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ROBIN L. CUTCHER, ) | |
| ) | CASE NO. 4:14-CV-1958 |
| Plaintiff, ) | |
| v. ) | |
| ) | MAGISTRATE JUDGE |
| ) | KENNETH S. McHARGH |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | **MEMORANDUM OPINION &** |
| ) | **ORDER** |
| Defendant. ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 15). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Robin Cutcher's ("Plaintiff" or "Cutcher") application for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

## I. PROCEDURAL HISTORY

On September 30, 2011, Cutcher filed an application for Disability Insurance benefits, initially alleging disability as of April 9, 2010, and subsequently amending the onset date to July 2, 2010. (Tr. 66, 174, 195). Plaintiff claimed that she was disabled due to disc herniation and nerve damage, high blood pressure, asthma, sleep apnea, and hives. (Tr. 114). The Social Security Administration denied her claims initially and upon reconsideration. (Tr. 63, 66, 120, 129).

Plaintiff filed a request for a review before an administrative law judge ("ALJ"). (Tr. 151). ALJ Melissa Warner convened an administrative hearing on April 24, 2013, to evaluate Plaintiff's applications. (Tr. 66-79). Plaintiff, represented by counsel, appeared and testified before the ALJ. (*Id*). A vocational expert ("VE"), Joseph L. Thompson, also appeared and testified. (*Id.*).

On May 16, 2013, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled. (Tr. 66-79). After applying the five-step sequential analysis,[1] the ALJ determined Plaintiff retained the ability to perform work existing in significant numbers in the national economy. (*Id*.). Subsequently, Plaintiff requested review of the ALJ's decision from the Appeals Council. (Tr. 58-59). The Appeals Council denied the request for review, making the ALJ's

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

May 16, 2013 determination the final decision of the Commissioner. (Tr. 3-6).  Plaintiff now seeks judicial review of the ALJ's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II.  EVIDENCE

### A.  Personal Background Information

Plaintiff was born on July 3, 1960, and was 50-years-old as of her alleged disability onset date (as amended) and 52-years-old as of her hearing date. (Tr. 174, 197).  As a result, she was considered a "person closely approaching advanced age" for Social Security purposes. 20 C.F.R. §§ 404.1563(d), 416.963(d).  Cutcher lives with her adult son, has a seventh grade education and has past relevant work experience as a truck driver, retail manager and cashier, and nurse's aide. (Tr. 202).

### B.  Medical Evidence

On April 9, 2010, Plaintiff fell from a chair at work and sustained injuries to her back and right arm, elbow and hand.  (Tr. 417-24).  She sought treatment for her injuries, complaining of pain in her back and right arm, on April 11, 2010 at the Bay Park Community Hospital emergency room.  (*Id*.).  Emergency room medical records indicate Plaintiff was observed with a normal gait and in no acute distress.  (*Id*.).  Examination revealed no costovertebral angle tenderness, negative straight-leg raises, and some tenderness in her back and right thigh muscles (Tr. 419).   Plaintiff was diagnosed with multiple contusions, a fall, and elbow, hand, and low back pain, although normal range of motion was found in her extremities.  (*Id*.).  Medical records indicate Plaintiff drove herself home upon discharge.  (Tr. 420).

On April 21, 2010, Plaintiff went to Northwest Ohio Urgent Care for lower back and right hand pain.  (Tr. 367).  X-rays revealed minimal scoliosis of her spine, and minimal to mild arthritic changes in her right hand.  (Tr. 365).  At this time Plaintiff was diagnosed with sciatica

3

and lumbar and right hand contusions. (Tr. 366). Following continued complaints of lower back pain and numbness in her feet, an MRI test was administered on May 26, 2010, revealing grade I spondylolisthesis L4 on L5 without spondylolysis, and a small right-sided synovial cyst, but no disc herniation, stenosis, or nerve root compression. (Tr. 333). EMG testing, conducted on August 11, 2010 showed evidence suggesting of L4-L5 and S1 radiculopathies, but clinical correlation was recommended. (Tr. 332). A further exam on March 22, 2011 showed demonstrated pain with range of motion and lumbar tenderness. (Tr. 336).

Plaintiff presented at the Northwest Ohio Urgent Care on various occasions and was examined by her primary care physician, Arshad Husain, M.D., or a certified nurse practitioner, from April 21, 2010 through April 2, 2012, and was provided with Workers' Compensation evaluation forms. On July 6, 2010 and July 20, 2010, Plaintiff was given restrictions of no lifting, no bending, twisting, turning, reaching, pushing, pulling, squatting, kneeling, or lifting about the shoulders; occasional standing and walking; and frequent sitting. (Tr. 350, 352). These limitations were renewed on August 3, 2010, August 31, 2010, and October 6, 2010, with the change to lifting of 10 pounds occasionally, and no lifting greater than 10 pounds. (Tr. 344, 347, 348). These limitations were renewed on November 9, 2010, January 11, 2011, and March 7, 2011, with a change to occasional sitting. (Tr. 338, 340, 342). At the majority of these examinations, Plaintiff was advised to avoid driving. (Tr. 340, 342, 344, 347, 348, 350, 352).

Complaining of continuing back pain and numbness, Plaintiff saw Nabil Ebraheim, M.D., beginning on September 11, 2010, at the University of Toledo Medical Center. (Tr. 373-376). Records from this visit indicate Plaintiff was in no apparent distress, and she was diagnosed with L4 to S1 radiculopathy with probable sacroiliitis. (*Id.*). Examination showed tenderness over the left, but not right, sacroiliac joint, and mild tenderness over the lumbosacral spine, and

4

negative results for straight-leg raise and Flexion Abduction and External Rotation ("FABER") tests. (*Id.*). Decreased sensation in the left great toe and saphenous nerve distribution was noted, as well as full motor strength in her extremities. (*Id.*). Plaintiff received a cortisone injection with no adverse reaction, and was advised to continue wearing a corset. (*Id.*).

Plaintiff was again examined by Dr. Ebraheim on March 28, 2011, complaining of pain but denying numbness, and reporting no relief from the previous cortisone shot. (Tr. 377-381). Records show Plaintiff was again observed as in no acute distress and a normal gait. *(Id.).* Examination revealed tenderness over the bilateral sacroiliac joints, a positive FABER test, no spinal deformity, and intact sensation and full motor strength. *(Id.).* Plaintiff was at this time referred to aquatic therapy. *(Id.).*

Similar findings were found during a follow-up examination on May 23, 2011, and again on September 12, 2011, although Plaintiff informed Dr. Ebraheim at the May appointment that the September 2010 cortisone shot resulted in an allergic reaction. (Tr. 382-389). Additionally, records from the May 2011 examination showed a restricted range of motion secondary to pain. (Tr. 385). Plaintiff was diagnosed with bilateral sacroiliitis and grade 1 spondylolisthesis at L4-L5, and prescribed Percocet, with records indicating the painkiller prescription would not be refilled unless she sustained a fracture or underwent a surgical procedure. (Tr. 384-85). Additionally, records from the September 2011 appointment reflect that Plaintiff's application for radiofrequency ablation was denied, and Dr. Ebraheim referred Plaintiff to continue aquatic therapy and chiropractic treatment. (Tr. 389).

On July 7, 2011, Plaintiff returned to Dr. Husein. Without diagnostic testing, Dr. Husain diagnosed Plaintiff with lumbar disc herniations and L4-L5 and S1 radiculopathy, noting tenderness of the lower spine and left lateral flexion limited by pain on examination. Dr. Husain

continued his previous restrictions, including a directive to avoid driving, and prescribed Percocet and physical therapy. (Tr. 330-31). On July 28, 2011, Dr. Husain issued a letter confirming he and his staff at Northwest Ohio Urgent Care had been treating Plaintiff for her work injury since April 21, 2010, and opined she could not travel for long distances. (Tr. 328). His July 7, 2011 opinion was restated on September 6, 2011, except for the driving restriction. (Tr. 327). These restrictions were again restated following Plaintiff's date of last insured on December 1, 2011, February 23, 2012, and April 2, 2012. (Tr. 429, 431, 436).

Plaintiff participated in physical therapy at Northwest Ohio Urgent Care from April 12, 2011 through September 29, 2011. (Tr 437-38, 440, 443-44, 451-52, 454). Therapy reports Plaintiff generally rated her pain at 6 to 7 out of 10, with an occasional higher rating. (*Id*.). Additionally, on March 28, 2012 (signed April 2, 2012), following her date last insured of September 30, 2011, Plaintiff was evaluated by Paul T. Barnes, LPT, and Joel Cousino, RKT, at Central Park West Rehabilitation Center, where she self-reported as to her work-related injury and daily activity limitations, including limited sitting and walking tolerances. (Tr. 458-465). The therapists observed normal posture but with an antalgic gait, diminished motor strength in her lower extremities, positive straight-leg raises, and reductions in lumbar range of motion, flexion, extension, and rotation. During testing Plaintiff had to stop due to complaints of pain and nausea. (*Id.*). Based on her reports and their observations, the therapists opined Plaintiff is not able to occasionally lift 10 pounds (although she can lift 2-3 pounds), is unlikely to tolerate repetitive activity, requires intermittent sit/stand options, and has job limitations due to her use of narcotics for pain tolerance. (Tr. 464-65).

Medical records show Plaintiff presented at the emergency room on December 8, 2010 for cough and chest congestion, and on February 23, 2011, for epigastric pain. (Tr. 284-289,

296). During the December 2010 examination she was observed to have grossly intact range of motion in all extremities, and on both occasions Plaintiff denied any musculoskeletal complaints. (*Id.*).

Following a polysomnogram at Bay Park Community Hospital on September 19, 2011, Plaintiff was diagnosed with severe obstructive sleep apnea with sleep fragmentation and oxygen desaturation. (Tr. 425). Plaintiff was advised to lose weight, and avoid hypnotics and alcohol before bedtime. (*Id.*).

### C. State Agency Evaluations

State agency medical consultants, Gary Hinzman, M.D. and Leanne M. Bertani, M.D., provided residual functioning assessments on November 15, 2011 and February 14, 2012. Based on evaluation of evidence on the record, the evaluations generally limited Plaintiff to occasional climbing of ramps and stairs, ladders, ropes, and scaffolds, kneeling, crouching, crawling and stooping, occasionally lifting or carrying 20 pounds, frequently lifting or carrying 10 pounds, standing for 4 to 6 hours and sitting 6 hours in an 8-hour workday, and unlimited pushing and pulling. (Tr. 119-128). Neither state agency doctor physically examined Plaintiff.

### III. SUMMARY OF THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2011.

2. The claimant did not engage in substantial gainful activity during the period from her amended alleged onset date of July 2, 2010, through her date last insured of September 30, 2011.

3. Through the date last insured, the claimant had the following severe impairments: probable L4-S1 radiculopathy and obstructive sleep apnea.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

7

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except:  work that could be done in a seated or standing position; occasional climbing of stairs; no climbing of ladders and the like; rare (meaning less than occasional but not completely precluded) stooping greater than 90 degrees; occasional kneeling or crouching; no crawling; frequent overhead reaching; occasional exposure to obvious hazards; and work with an SVP of 1 to 2 where the pace of productivity was not dictated by an external source over which the individual had no control such as an assembly line or conveyor belt.

6. Through the date last insured, the claimant was unable to perform any past relevant work.

7. The claimant was born on July 3, 1960, and was 51 years old, which is defined as an individual closely approaching advanced age, on the date last insured.

8. The claimant has a limited education and is able to communicate in English.

9. Transferability of job skills in not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from July 2, 2010, the amended alleged onset date, through September 30, 2011, the date last insured.

(Tr. 68-79) (internal citations omitted).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  See 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  See 20 C.F.R. §§ 404.1505, 416.905.

## V.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  See *Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  See *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.*

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion.  See *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. See *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI.  ANALYSIS

Plaintiff seeks review from the Court based on the allegation that the Commissioner erred in determining the Plaintiff's residual functional capacity by failing to assign controlling weight to the opinions of Plaintiff's treating physician, Dr. Husain.  Further, because Plaintiff amended

9

her alleged onset date to her fiftieth birthday, Plaintiff alleges a proper assignment of controlling weight to Dr. Husain would have recognized a limitation to sedentary work, thereby resulting in a favorable decision pursuant to 20 C.F.R., Pt. 404, Subpt. P, App. 2, Rule 201.10.  Based on the following analysis, Plaintiff's arguments are not well-taken.

### A.  The ALJ properly adhered to the Treating Source Rule when she afforded "little weight" to the opinions of Plaintiff's treating physician.

It is well-established that an ALJ must give special attention to the findings of a claimant's treating sources.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). This doctrine, referred to as the "Treating Source Rule" recognizes that physicians who have a long-standing relationship with an individual are best-equipped to provide a complete picture of the person's health and treatment history.  *Id*; 20 C.F.R. § 416.927(c)(2).  Opinions from such physicians are entitled to controlling weight only if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record."  *Wilson*, 378 F.3d at 544.

When determining that a treating physician's opinion is not entitled to controlling weight, the ALJ must consider the following factors in deciding what weight is appropriate:  (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) any other factors which tend to support or contradict the opinion.  *Id.*  20 C.F.R. §§ 416.927(c)(1)-(6), 404.1527(c)(1)-(6).  Moreover, the regulations require the ALJ to provide "good reasons" for the weight ultimately assigned to the treating source's opinions that are sufficiently specific to make

clear to any subsequent reviewers the weight given to the treating physician's opinions and the reasons for that weight.  *See id*. (quoting S.S.R. 96-2p, 1996 WL 374188, at *5).

      Plaintiff contends that the ALJ erred by assigning little weight to the opinion of her treating physician, Dr. Husain, which she alleges is supported by evidence both before and after Plaintiff's date of last insured.  However, the ALJ conducted a thorough analysis and adhered to the Treating Source Rule, rendering Plaintiff's argument meritless.  In the present case, the ALJ thoroughly summarized Dr. Husain's medical opinions, noting specific appointment dates and opinions from April 21, 2010 through April 2, 2012, and additionally considered treatment records from other sources, including a nurse practitioner, another examining physician, and physical therapists, as well as medical records from emergency room visits. (Tr. 73-77).  The ALJ provided a number of good reasons supporting her conclusion that the doctor's opinions should be awarded only "little weight," including a lack of evidentiary support from the record.  Despite Plaintiff's contention to the contrary, the ALJ's reasons are supported by substantial evidence in the record and are sufficient to comply with the requisites of the Treating Source Rule.

      The ALJ provided a multitude of good reasons to discredit the opinions of Dr. Husain as to Plaintiff's alleged physical limitation to sedentary work, finding this inconsistent with the objective medical evidence.  The ALJ acknowledged Dr. Husain's reports consistently found limitations in Plaintiff's abilities to lift, bend, squat, and reach overhead below the knees, advised Plaintiff to avoid driving, and included reports of pain (Tr. 73-74, 76).  However, the ALJ, looking at the record as a whole, determined "these opinions, which limit the claimant to a reduced range of sedentary work at most, are…not supported by the medical evidence of record." (Tr. 74).  First, the ALJ found the claimant's x-rays, MRI studies, and EMG testing, do not

support the limitation and are indicative of relatively mild symptomology. (Tr. 74-75, 77). Second, the ALJ points to objective findings from examining doctors and therapists, including consistent reports of Plaintiff exhibiting normal gait and full motor strength, a denial of musculoskeletal difficulties when Plaintiff presented at the E.R. in December 2010 and February 2011, and observations of a grossly intact range of motion on at least one occasion. (Tr. 74-75, 77). Third, despite directives to avoid driving, the ALJ points to extensive evidence, including notations in Plaintiff's medical evaluation records, that she did, indeed, continue driving despite her injuries. (Tr. 77). Finally, the ALJ determined Plaintiff's overall conservative course of treatment, which included recommendations for physical therapy, chiropractic care, and use of corset and back braces, and did not include more invasive measures such as surgery,[2] "supports the conclusion that, although the claimant has impairments, her symptoms are not as severe as alleged." (Tr. 75, 77). Such reasoning is sufficiently specific to support the ALJ's decision not to fully adopt the doctor's findings as to Plaintiff's physical limitations.

**B. Radiofrequency ablation recommendation and denial does not undermine the ALJ's determination that Plaintiff followed a conservative treatment plan.**

There is also no merit to Plaintiff's argument that a recommendation for radiofrequency ablation undermines the ALJ's determination that Plaintiff, along with her caregivers, followed a conservative treatment plan, without "more aggressive modalities." First, there is no evidence in the record definitively categorizing radiofrequency ablation as more than a conservative treatment, and the ALJ specifically refers to a lack of indication in the record that any surgical procedure was warranted. See *Nause v. Comm'r of Soc. Sec.*, No. 3:14CV941, 2015 WL 1728209, at *8 (N.D. Ohio Apr. 15, 2015) (upholding ALJ analysis including finding that

---

[2] The ALJ specifically rejects Plaintiff's testimony that surgical intervention was recommended six to nine months after the accident because there was no evidence of any such recommendation on the record. (Tr. 77).

12

treatment for back pain "relatively conservative" where treatment included medications, physical therapy, and radiofrequency ablation). (Tr. 73, 77). Second, the Plaintiff argues that the treatment option was not undertaken because approval for the procedure was denied by the Ohio Bureau of Workers' Compensation. Plaintiff cites to case law to support her assertion that an ALJ should not effectively punish a claimant when medical treatment was not sought or performed due to a lack of finances. (Pl. Reply Brief 3, citing *Rozgowski v. Callahan*, 982 F. Supp. 660, 670 (1997) ("[T]he ALJ must consider a plaintiff's allegation that he has not sought medical treatment or used medication because of a lack of finances.") (citing *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (inability to afford prescribed medical treatment excuses non-compliance with treatment plan)). However, this does not support Plaintiff's present claim. Although Plaintiff alleges she did not get radiofrequency ablation treatment because her claim was denied by Workers' Compensation, there is no additional assertion or evidence that she could not get the treatment due to financial hardship. The ALJ specifically acknowledged the record shows Plaintiff has medical insurance and is able to support herself financially with her late husband's pension. (Tr. 71). There is no indication that the ablation therapy was necessary, that such recommendation was submitted to her insurance for approval, or that any supplemental or alternative treatment was suggested in its place. Rather, Plaintiff's conservative course of treatment resumed. (Tr. 73). Plaintiff's argument that it was factually inaccurate for the ALJ to find that Plaintiff's treatment lacked more aggressive modalities is unavailing.

**C. Plaintiff is not "disabled" as an individual "closely approaching advanced age" and limited to sedentary work.**

Because the ALJ appropriately determined that Plaintiff is limited to light work, rather than sedentary work, as fully explained above, there is no basis for Plaintiff's contention that Plaintiff

is entitled to a favorable decision under 20 C.F.R., Pt. 404, Subpt. P, App. 2, Rule 201.10, which directs a finding of "disabled" for an individual "closely approaching advanced age" and limited to sedentary work.

## VII.  DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the final decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date: September 8, 2015